SALTER, J.
(dissenting).
I respectfully dissent from the majority’s conclusion that the “Order Finding Fiduciary Relationship and Requiring Amended Complaint” (Order) must be vacated in its entirety and that the probate division judge must “deny, without more, the [daughter’s] motion to vacate as untimely.” I believe that the circuit judge had jurisdiction to reach the limited findings and conclusions set forth in the Order, that those findings are correct on the facts and law, and that the appellant consented to the trial of the issues embodied in that Order.

Proceedings in the Circuit Court

The pleadings and trial record are more complicated than those presented by the majority. The appellant was the former wife of Jorge Leon, who died in 1987. Mr. Leon left a $100,000.00 life insurance policy benefitting his two minor children (Melissa, then age five, and Jorge Jr., then age eight). When the benefits were paid in 1988, a guardianship was created for each child, and the appellant served as the guardian. In 1989, the appellant remarried, and her new spouse later adopted the two children. The appellant is now known as Yvette Asous and the appellee/daughter as Melissa Antonopoulos.
In 2000, Melissa Antonopoulos turned 18, and the guardianship with the insur-anee proceeds (and twelve years of income on those proceeds) was terminated. Counsel for Ms. Asous filed a receipt indicating that all guardianship funds had been turned over to Ms. Antonopoulos and a release whereby Ms. Asous was released as guardian from any further liability. Ms. Asous was then discharged as guardian in March 2000.
In fact, and as established at trial without dispute, after Ms. Asous was discharged as guardian the guardianship proceeds were held and administered by Ms. Asous and her husband. The bank and securities accounts employed for this purpose did not indicate that they were fiduciary accounts. Mr. Asous and Ms. Asous also added the names of the two children of their own marriage to those accounts for a period between the discharge of Ms. Asous as guardian and the point at which, years later, Ms. Antonopoulos began investigating the funds left for her upon her father’s death. At trial, the testimony differed sharply as to how and when Ms. Antonopoulos learned that her late father had provided insurance proceeds for her use and benefit, and when she first began to request that all such funds be turned over and accounted for.[1]
What is clear, however, is that when Ms. Antonopoulos did request the return of all the proceeds of the guardianship, they were not forthcoming.[2] She retained an attorney who reviewed the guardianship file, sent a demand letter to Mr. Asous and Ms. Asous (March 14, 2008), and three weeks later filed a “Petition to Reopen Case, Petition for Status Conference, and Petition to Compel Guardian to Release Wards’ Assets.” In April 2008, the trial *902 court reopened the case in order to permit the parties to present their claims and defenses to the petitions. In July 2008, Mr. Asous and Ms. Asous wired $22,877.40 in a Wachovia Securities account in their names to Ms. Antonopoulos’s (and her brother’s) counsel’s trust account, and Mr. Asous and Ms. Asous also wired $97,506.22 from the liquidation of their account at Schwab to the same trust account.
Although Mr. Asous and Ms. Asous maintained that (a) these were the only remaining guardianship funds (and earnings on those funds) and (b) they had not used any of the funds or earnings for their own purposes, they did not provide a written accounting to substantiate those claims. Importantly, Mr. and Ms. Asous’s disgorgement of such funds, over $120,000, did not occur until months after Ms. Anto-nopoulos had filed her petition to reopen the guardianship and the probate judge had reopened the case to receive evidence.
The trial court then set an evidentiary hearing on the petition to vacate the discharge of the guardian and to compel the turnover of the former wards’ funds. At trial, Ms. Antonopoulos sought to prove that her signatures on the documents closing the guardianship (waiving an accounting and consenting to discharge of the guardian) were forged, and that Mr. Asous and Ms. Asous had breached their fiduciary duties with respect to the guardianship funds paid over to them in 2000. The trial court’s Order found that Ms. Antonopoulos had not proven her claim that the guardianship papers were forged, given the conflicting expert handwriting testimony and the fact that the original documents were no longer in the court file.
The trial court’s Order went on, however, to find that Ms. Asous had admitted a fiduciary duty to Ms. Antonopoulos, and that her attorney had filed a pleading stating that both Ms. Asous and Mr. Asous had received the guardianship distributions, had kept detailed records for those funds, and had “always considered the monies as belonging to [Ms. Antonopoulos and her brother].... ” The trial court found that Florida Rule of Judicial Administration 2.505(h) made those concessions binding upon Mr. Asous and Ms. Asous. The court then found by clear and convincing evidence, citing sections 736.0103(19) and 736.0407, Florida Statutes (2012), and Charles Taylor Bogert, Trusts and Trustees (rev. 3d ed. 2008), that Ms. Asous as former guardian was the trustee of an express trust with resulting duties to account for the trust assets in her custody and not to commingle such funds with her personal assets. The court found that Ms. Asous breached her fiduciary duty to Ms. Antonopoulos, but directed that any further prosecution of such claims would have to be pursued in the civil (general jurisdiction) of the circuit court, “as the court finds the breach of a fiduciary duty to [Ms. Antonopoulos] occurred after the former guardian’s duties were concluded. In the alternative, the court will transfer the pending complaint for relief to the civil division with leave to amend.”

Analysis

I see no error or lack of jurisdiction in the probate division judge’s respect for the administrative line of demarcation established by the circuit court’s procedures regarding the probate and general jurisdiction divisions. In a pretrial order, the probate judge referred to the local rules of the circuit court establishing and defining those divisions, and noted that Ms. Anto-nopoulos could pursue guardianship issues (in the probate court) and equitable remedies (in the general jurisdiction division, as *903 her brother’s claims were found to re-. quire).[3]
The petition alleged facts which would have, if proven during the hearing, constituted a basis for relief from the final order discharging Ms. Asous as guardian, under Florida Rule of Civil Procedure 1.540(b), if commenced as an original proceeding.[4] But because the primary claim involves the acts and omissions of a guardian and former guardian, this is a distinction without a difference on this record. Ms. Asous was served anew, she was represented by counsel, the petition was treated as an adversary proceeding[5] for purposes of the probate and guardianship rules, and Ms. Asous filed motions and other pleadings in opposition to the relief sought. Ms. Anto-nopoulos could have filed her claims as an independent action in the general jurisdiction division, but under the local rules of the circuit, such an action would have been transferred to the probate division.
Once the parties proceeded to file pleadings and evidence regarding not only the alleged forgeries, but also (1) the former guardian’s conceded undertaking to hold and invest the funds and their proceeds for Ms. Antonopoulos, and (2) Ms. Asous’s and Mr. Asous’s use of those funds over the following years, the probate judge was not obligated by any applicable statute or rule to declare herself without jurisdiction to hear that evidence. The issue of whether Ms. Asous was a fiduciary with respect to the guardianship funds retained by her after discharge was immediately conceded by her; her defense, tried by consent, was that she had paid over all those funds, including earnings, and had not allowed any of those funds to be expended for any purpose other than the benefit of Ms. An-tonopoulos. See Rosenberg v. Guardian Life Ins. Co., 510 So.2d 610, 611 (Fla. 3d DCA 1987).
Ms. Asous and Mr. Asous presented evidence at the evidentiary hearing in the probate court in an effort to prove that all guardianship proceeds and earnings had been accounted for. The record fell short of establishing any such fact, and the probate court properly made that limited finding.[6] The probate court had jurisdiction to do so — because a circuit judge is a circuit judge, no matter his or her assigned division[7] — and the preliminary issues of the fiduciary duty applicable to the guardianship proceeds, breach of that duty, and failure to account were tried in that division. In the aftermath of those findings, which were supported by competent, substantial evidence at the evidentiary hearing, and which correctly applied the law, we should not preclude Ms. Antonopoulos from seeking her detailed accounting and, if warranted, damages for the breaches of duty, in the general jurisdiction division. *904 For these reasons, I would affirm the probate court’s order. I respectfully dissent.

. The record indicates that Ms. Antonopoulos became estranged from Ms. Asous and Mr. Asous after she turned 18.

. Ms. Asous and Mr. Asous withheld Ms. An-tonopoulos's funds and did not account for them, even as Ms. Antonopoulos was working multiple jobs and struggling to pay tuition.

. Ms. Antonopoulos’s brother did not seek to vacate the guardian's discharge; he sought an accounting and the turnover of the proceeds received by the former guardian for his use and benefit.

. See Huffman v. Delacruz, 719 So.2d 385 (Fla. 4th DCA 1998).

. Fla. Prob. R. 5.025(d)(2).

. The trial record includes certain bank and securities account records, disbursements for an automobile, and occasional smaller checks to Ms. Antonopoulos. These records are not a complete accounting for the funds held by Ms. Asous for the time between her discharge as guardian through the time the probate court re-opened the case and Ms. Asous then transferred funds to the trust account of Ms. Asous’s attorney.

.See Kates v. Lifter, 84 So.3d 1093, 1094 (Fla. 3d DCA 2012) (Schwartz, Senior Judge, concurring).